## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL NO. |
| ) | |
| v. ) | VIOLATIONS: 18 U.S.C. §§ 1516 and 2 |
| ) | Obstruction of a Federal Audit |
| MICHAEL CRAIG, ) | |
| ) | |
| Defendant. ) | |
| ) | |

### INFORMATION

The United States of America hereby charges that:

### GENERAL ALLEGATIONS

At times relevant to this Information:

1. Defendant **MICHAEL CRAIG** was a resident of Keswick, Virginia.

2. Company A was a government contractor headquartered in Virginia that provided, among other things, cloud computing services to federal government agencies. From September 2017 through at least August 2022, Company A offered a cloud service that was marketed as a secure, cloud-based platform that provided federal agencies with data access, analytics and visualization capabilities (the Platform).

3. **CRAIG** was employed as a Security Delivery Associate Manager for Company A. From at least in or around May 2020 through in or around November 2021, **CRAIG** was the security and compliance lead for the Platform. **CRAIG** was also the Information System Security Officer and person responsible for maintaining the appropriate operational security posture for the Platform.

FedRAMP Assessment and Authorization

4. The Federal Risk and Authorization Management Program (FedRAMP) was a government-wide program that provided a standardized approach for assessing, authorizing, and continuously monitoring the security of cloud products and services as a prerequisite for use by the federal government.

5. The General Services Administration (GSA) was a federal agency headquartered within the District of Columbia that administered FedRAMP.

6. The Joint Authorization Board (JAB) was a governing body for FedRAMP comprised of representatives from the GSA, Department of Defense (DoD), and the Department of Homeland Security (DHS). The JAB issued cloud service offerings that met FedRAMP requirements.

7. FedRAMP established uniform security requirements for cloud services based on the sensitivity and criticality of information processed, stored, or generated by the system. Under FedRAMP, there were three risk impact levels: Low, Moderate, and High. To hold federal information at each level, cloud service offerings were required to obtain authorization to operate at that baseline and demonstrate continuous compliance with FedRAMP security requirements, called security controls, through mandatory reporting and assessments.

8. On or about September 12, 2017, Company A obtained a provisional authorization to operate (P-ATO) the Platform at the FedRAMP Moderate impact level from the JAB.

9. To obtain and maintain its P-ATO, FedRAMP required that an accredited third-party assessment organization (3PAO), a federal auditor, assess the Platform's implementation of security controls at three stages: prior to obtaining initial authorization, annually to maintain authorization, and prior to significant changes to the system. A significant change was a change

likely to affect the security state of the information system. For example, an uplift from FedRAMP Moderate to High was a significant change.

10. Assessments by the 3PAO included, but were not limited to, gathering physical artifacts and requesting live demonstrations to test the implementation of security controls. Evidence and results from 3PAO assessments were incorporated into an authorization package that included a System Security Plan, Security Assessment Plan, and Security Assessment Report, among other materials. Authorization packages were submitted to FedRAMP and authorizing officials for approval and were available to current and prospective government customers.

11. Company A had at least seven federal agency customers that leveraged the Platform's JAB P-ATO to obtain agency authorization for cloud services provided by Company A pursuant to contracts and subcontracts with the United States.

## COUNT ONE
## Obstruction of a Federal Audit
## (18 U.S.C. §§ 1516 and 2)

12. The introductory allegations in paragraphs 1 through 11 are re-alleged and incorporated by reference as though fully set forth herein.

13. Between in or around May 2020 and continuing through at least in or around November 2021, in the District of Columbia and elsewhere, the defendant,

**MICHAEL CRAIG,**

with the intent to deceive and defraud the United States, endeavored to influence, obstruct, and impede federal auditors, who defendant knew to be performing official duties relating to the FedRAMP assessment and authorization of Company A, an entity receiving in excess of $100,000, pursuant to contracts and subcontracts with the United States during any twelve month period in 2020 and 2021. **CRAIG** made and aided and abetted in making representations and submissions

3

to assessors and authorizing officials during annual and significant change assessments in 2020 and 2021, which **CRAIG** knew did not accurately reflect the technical capabilities and operational security of the Platform. During control implementation testing, **CRAIG** used deceptive tactics to conceal Company A's failure to implement and maintain required security controls related to, among other things, data loss prevention, access control, and continuous monitoring from assessors, which **CRAIG** knew.

In violation of Title 18, United States Code, Sections 1516 and 2.

LORINDA I. LARYEA
Acting Chief, Fraud Section
Criminal Division
United States Department of Justice

By:

/s/
Lauren Archer
Paul Hayden
Trial Attorneys
Criminal Division, Fraud Section
United States Department of Justice
1400 New York Avenue, N.W.
Bond Building, Fourth Floor
Washington, D.C. 20530